UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
JOHN DOE,

                        Plaintiff,

                                                            DOCKET NO.: 19-cv-00014

            v.

                                                            (Hurley, J.)
                                                            (Tomlinson, M.J.)
TRACY HAAS, SUZANNE SHANE, and
THE STATE UNIVERSITY OF NEW YORK
AT STONY BROOK,

                        Defendants.
------------------------------------------------------------------X


### MEMORANDUM OF LAW IN SUPPORT OF
### DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT

LETITIA JAMES
Attorney General of the
      State of New York
Attorney for Defendants
300 Motor Parkway, Suite 230
Hauppauge, New York   11788
(631) 231-2424


SUSAN M. CONNOLLY
      OF COUNSEL

PATRICIA M. HINGERTON
      OF COUNSEL

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES…………………………………………………...………..i

PRELIMINARY STATEMENT ........................................................................................1

BACKGROUND ................................................................................................................2

    A. The Conduct Code ........................................................................................2

    B. Pertinent Facts Regarding the Misconduct
       Proceeding in the Instant Case ........................................................................3

    C. The Amended Complaint.................................................................................6

LEGAL STANDARDS REGARDING A MOTION TO DISMISS...................................7

ARGUMENT

POINT I:  MOST OF PLAINTIFF'S CLAIMS UNDER 42 U.S.C. §1983
             ARE BARRED BY ELEVENTH AMENDMENT IMMUNITY ....................8

POINT II: THE AMENDED COMPLAINT FAILS TO STATE A
           PLAUSIBLE DUE PROCESS CLAIM ........................................................10

    A. Applicable Law...............................................................................................10

    B.  Application of the Law to the Facts Alleged in
       the Amended Complaint .................................................................................11

POINT III: EVEN IF THE AMENDED COMPLAINT STATES A PLAUSIBLE
           DUE PROCESS CLAIM, HAAS AND SHANE ARE ENTITLED
           TO QUALIFIED IMMUNITY .....................................................................13

POINT IV:  PLAINTIFF'S TITLE IX CLAIMS ARE DEFICIENT................................15

    A. There is no Individual Liability under Title IX..............................................16

    B.  The Factual Allegations in the Amended Complaint
       Do Not Support a Plausible Title IX Claim
       Against the University ....................................................................................16

        1.  Applicable Law .....................................................................................16

        2.  Application of the Law to the Facts Alleged in
           the Amended Complaint..................................................................17

CONCLUSION  ................................................................................21

# TABLE OF AUTHORITIES

## Cases

Ashcroft v. al-Kidd, 563 U.S. 731 (2011)……………………………...………………………………14

Ashcroft v. Iqbal, 556 U.S. 662 (2009)……………………………………………………..………..7

B.B. v. New Sch., 2018 U.S. Dist. Lexis 80068 (S.D.N.Y. 2018)……………………..…………...21

Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)……………………………………………...……7

Chambers v. Time Warner, Inc., 282 F.3d 147 (2d Cir. 2002)……………………………………….2

Cleveland Bd. of Educ. v. Loudermill, 470 U.S.532 (1985)……………………………………….11

Doe v. Baum, 903 F.3d 575 (6th Cir. 2018)…………………….……………………...………….14

Doe v. Colgate Univ., 2017 U.S. Dist. Lexis 180267 (N.D.N.Y. 2017),
    aff'd, 2019 U.S. App. Lexis 1258 (2d Cir. 2019) …………………………………………….12

Doe v. Columbia Coll. Chi., 299 F. Supp.3d 939 (N.D. Ill. 2017)…………………..……..…20, 21

Doe v. Columbia Univ., 831 F.3d 46 (2d Cir. 2016)…………………………………….17, 18, 21

Doe v. Cummins, 662 Fed. Appx. 437 (6th Cir. 2016)……………………………………....11, 20

Doe v. Univ. of Colo., 255 F. Supp.3d 1064 (D. Colo. 2017)………………………..……….15, 21

Dube v. State Univ. of N.Y., 900 F.2d 587 (2d Cir. 1990)……………………………………..…8

Edelman v. Jordan, 415 U.S. 651 (1974)…………………….……………………………………9

Ex parte Young, 209 U.S. 123 (1908)……..…………………………………..…………………..9

Fitzgerald v. Barnstable Sch. Comm., 555 U.S. 246 (2009)……………………………………......16

Ford v. Reynolds, 316 F.3d 351 (2d Cir. 2003)……………………………………………………9

Goss v. Lopez, 419 U.S. 565 (1975)…………………………………………..……………...10, 11

Green v. Mansour, 474 U.S. 64 (1985)…………………………………………..……………...8

i

In re Deposit Ins. Agency, 482 F.3d 612 (2d Cir. 2007)……………………………………...9

Kentucky v. Graham, 473 U.S. 159 (1985)……………………………...…………………9

Luna v. Pico, 356 F.3d 481 (2d Cir. 2004)……………………………………….……14

Makarova v. United States, 201 F.3d 110 (2d Cir. 2000)………………………………7

Mamot v. Bd. of Regents, 367 Fed. Appx. 191 (2d Cir. 2010)…………………………8

Marshall v. Ohio Univ., 2015 U.S. Dist. Lexis 155291 (S.D. Ohio 2015)……………15

Mathews v. Eldridge, 424 U.S. 319 (1976)………………………………………10

Matusousky v. Merrill Lynch, 186 F. Supp.2d 397 (S.D.N.Y. 2002)…………..………..18

Miotto v. Yonkers Pub. Schs., 534 F. Supp.2d 422 (S.D.N.Y. 2008)……………….…16

Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306 (1950)...………………10

Nash v. Auburn Univ., 812 F.2d 655 (11th Cir. 1987)…………….…………….…11, 13

Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC.,
    595 F.3d 86 (2d Cir. 2010)….……………………………………………7

Papasan v. Allain, 478 U.S. 265 (1986)……………………….…………………8, 9

Patrick v. Success Acad. Charter Schs., Inc., 354 F. Supp.3d 185 (E.D.N.Y. 2018)….………15

Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89 (1984)………………………9

Seminole Tribe of Florida v. Florida, 517 U.S. 44 (1996)……………………………8

Tesoriero v. Syosset Cent. Sch. Dist., 382 F. Supp.2d 387 (E.D.N.Y. 2005)…………………16

Vega v. State Univ. of N.Y. Bd. of Trustees, 67 F. Supp.2d 324 (S.D.N.Y. 1999)……………15

Welcome v. N.Y.C. Dep't of Educ., 2018 U.S. Dist. Lexis 190716 (E.D.N.Y. 2018)…………16

Will v. Michigan Dep't of State Police, 491 U.S. 58 (1989)……………………….......8

Winnick v. Manning, 460 F.2d 545 (2d Cir. 1972)…..……………………...11, 12, 14, 15

Yu v. Vassar College, 97 F. Supp.3d 448 (S.D.N.Y. 2015)……………………………12

Yusuf v. Vassar College, 35 F.3d 709 (2d Cir. 1994)……………………….………………..17

**Statutes and Rules**

20 U.S.C. §1681 *et seq*……………………………………………………………………………1

       20 U.S.C. §1681(a)…...…………………………………………………………………16

42 U.S.C. §1983…………………………………………...……………………………1, 6, 9

42 U.S.C. §2000d-7…………………………………………………………….…...……………15

F.R.C.P. 12(b)(1)…………………………………………………………………………7

F.R.C.P. 12(b)(6)…………………………………………………………...….………2, 7

## PRELIMINARY STATEMENT

John Doe ("Plaintiff") a male student at the State University of New York at Stony Brook (the "University"), brings the instant action against the University and two officials thereof, Tracy Haas ("Haas") and Suzanne Shane ("Shane" and collectively, the "Defendants"), alleging violations of his constitutional and federal statutory rights in connection with an administrative disciplinary proceeding brought against him pursuant to the University's Code of Student Responsibility (the "Conduct Code"). The Conduct Code process was initiated when a female student filed a complaint with the University accusing Plaintiff of engaging in a non-consensual sexual encounter.  At the conclusion of the process, Plaintiff was found "Responsible" for violating two provisions of the Conduct Code.  Plaintiff challenges this finding and the process that lead to it, claiming that his procedural due process rights under the Fourteenth Amendment and 42 U.S.C. §1983 were violated, and that he was discriminated against based upon his sex/gender in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. §1681 *et seq.* ("Title IX").

As discussed below, the Amended Complaint, which seeks damages and equitable relief, is legally deficient in a number of respects and should be dismissed for the following independent, dispositive reasons: (1) most of Plaintiff's claims under 42 U.S.C. §1983 are barred by Eleventh Amendment immunity; (2) no plausible due process claim has been stated; (3) even if the Amended Complaint states a plausible due process claim, Haas and Shane are entitled to qualified immunity; and, (4) the Title IX claims are deficient because there is no individual liability under that statute, and there are inadequate factual allegations to support a plausible inference that the University discriminated against Plaintiff based on his gender.

1

## **BACKGROUND**

### A. **The Conduct Code**[1]

The Conduct Code sets forth rules governing the behavior of University students.  These rules promote the University's educational mission and interests.  See Conduct Code, "Introduction" and "Preamble," p.3.  They are applicable to all University students.  Id. at "Preamble," p.3.

The Conduct Code sets forth an administrative process that must be followed when a violation of its provisions has been alleged.  See id. at §VII, pp.16-24.  Complaints of sexual misconduct, which include non-consensual sexual contact and non-consensual sexual intercourse and/or penetration, are taken very seriously.  Id. at §VII, A, p.16; C, 5(b) and (c).  When a complaint alleging sexual misconduct is received, an investigation is conducted, and if there is sufficient evidence to warrant further action, a Notice of Charges is issued.  Id. at §VII, D, 1, 4, pp.20-21.

---

[1]  A copy of the Code of Student Responsibility, effective August 1, 2017 (referred to herein as the "Conduct Code" or the "2017 Conduct Code"), which is the version that was applied in the instant case, is publically available and can be found at: https://www.stonybrook.edu/commcms/studentaffairs/ucs/_pdf/universitystudentconductcode.pdf.  For the convenience of the Court, a copy of the same is attached to the accompanying Affirmation of Susan M. Connolly, dated May 29, 2019 (the "Connolly Affirm.") as Exh. B.

The Court can consider the Conduct Code in deciding this motion.  It is well-settled that on a FRCP 12(b)(6) motion to dismiss, the Court may consider "any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference."  Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002).  The Amended Complaint, a copy of which is attached as Exh. A to the Connolly Affirm., incorporates the Conduct Code by reference.  See, e.g., Amended Complaint, ¶¶63-68, 90, 138.

Contested complaints receive a hearing at which students are given certain rights, including: (1) to present evidence on their behalf: (2) to confront the evidence against them and cross-examine any witness present; (3) the assistance of an advisor of their choice; and, (4) a hearing board, referred to as a "Review Panel," consisting of faculty and staff members. Id. at §VII, D, 4, 7, pp.21-22. While parties are prohibited from directly cross-examining one another, they may submit written questions directed to the Hearing Officer, who then determines whether they are relevant to the incident and policies allegedly violated. Id. at §VII, D, 7(b), p.22.

The University must demonstrate by a preponderance of the evidence (i.e., the "more likely than not" standard) that a student has committed sexual misconduct. Id. at §VII, D, 7(l), p.22. A decision regarding the student's "responsibility" as to each of the charges is rendered by a majority vote of the Review Panel members. Id. If the Review Panel determines that the University has met its burden, it recommends a sanction, which is reviewed by a University official who determines the appropriate sanction. Id. at §VII, D, 7(m), p.23. The Conduct Code includes an appeals process before a designated Appeals Panel. Id. at §VII, D, 10, p.24. The decision of the Appeals Panel is final. Id.

## B. Pertinent Facts Regarding the Misconduct Proceeding in the Instant Case[2]

On or about March 12, 2018, B.G.,[3] a female student at the University, filed a sexual misconduct complaint, alleging that Plaintiff penetrated her anus without consent during an otherwise consensual sexual encounter on March 5, 2018. See Amended Complaint, ¶¶24, 26, 35-

---

[2]  For purposes of this motion to dismiss, Defendants have assumed that the facts alleged in the Amended Complaint are true.

[3]  The Amended Complaint refers to the female complainant by pseudonymous initials. See Amended Complaint, fn.3; see also Memorandum and Order of this Court, dated March 20, 2019 (granting Plaintiff's application to, among other things, proceed as John Doe and to identify the female complainant in the underlying sexual misconduct proceeding as B.G.).

36, 54.   Thereafter, on March 28, 2018, Plaintiff filed his own complaint with the University, alleging that he was unable to consent to sexual intercourse with B.G. because he was intoxicated. Id. at ¶58.

Following an investigation, on July 31, 2018, Plaintiff received Notice of Charges and Notice of Review Panel Hearing scheduled to take place on August 10, 2018, at which both parties' allegations would be adjudicated.   Id. at ¶¶63, 77.   In the notice, Plaintiff was advised of, among other things, the two Conduct Code violations with which both he and B.G. were charged, namely, (1) non-consensual sexual contact (§VII, C, 5(b)) and (2) non-consensual sexual intercourse and/or penetration (§VII, C, 5(c)).   See Amended Complaint, ¶64.

The Conduct Code that was applied to the misconduct proceeding was the one in effect in August 2017. Id. at ¶70.   Plaintiff's advisor requested that Shane, associate managing counsel for the University, apply the provisions of the Conduct Code, effective August 1, 2018 (the "2018 Conduct Code")—which would have allowed Plaintiff to submit evidence within two days of the hearing rather than within five days (as required by the 2017 Conduct Code)—but Shane refused. Id.   at ¶¶16, 67-70.   Since the 2017 Conduct Code applied, Plaintiff's proposed submission of evidence (i.e., certain text messages between himself and B.G.), which was offered less than five days before the hearing, was rejected as untimely.   Id. at ¶¶90-92.

On August 10, 2018, both Plaintiff and B.G. appeared for the hearing, which took place before a three-member Review Panel consisting of university faculty/staff.   Id. at ¶¶72, 74.   Haas served as the Hearing Officer.   Id. at ¶¶15, 73, 75.   The Title IX investigator presented her Investigative Report, which had been made available to the parties prior to the date of the hearing, and responded to questions about the same.   Id. at ¶77.   Opening statements were then made by B.G. and Plaintiff, after which the parties were permitted to submit questions for the opposing

4

party to Haas. Id. at ¶¶79-82. Haas did not ask B.G. "numerous" questions on Plaintiff's list based on relevance and appropriateness, id. at ¶83, which allegedly denied Plaintiff the opportunity to confront his accuser, id. at ¶89.

Plaintiff takes issue with other aspects of the hearing as well. Specifically, he complains that Haas allowed B.G. to call a witness, even though B.G. had not given notice of the witness five days prior to the hearing. Id. at ¶¶94-96. There are no facts set forth, however, suggesting that Plaintiff was precluded from questioning the latter witness. Plaintiff also alleges that he was not allowed to question an alleged critical witness, A.H., who was not present at the hearing. A.H. was not contacted during the hearing because B.G. notified Haas that A.H. did not want to participate in it. Id. at ¶¶98-114. Further, Plaintiff alleges that, during the hearing, B.G. was given "a lot of leeway," was "guide[d] along the way," and was questioned in a gentler manner than he was. Id. at ¶¶115-24.

Following the hearing, on August 22, 2018, the University issued and delivered to Plaintiff the Administrative Hearing Disposition, finding him "Responsible" for both charges of violating the Conduct Code. Id. at ¶125; see also Administrative Hearing Disposition, dated August 22, 2018, addressed to Plaintiff from the Director of the Office of University Community Standards (the "Plaintiff Hearing Disposition")[4] (a copy of which is attached as Exh. C to the Connolly Affirm.), pp.1-3.

On the same date, an Administrative Hearing Disposition was issued to B.G. regarding Plaintiff's complaint against her, and she was found "Not Responsible" for the Conduct Code

---

[4] The Amended Complaint incorporates the Plaintiff Hearing Disposition by reference, see, e.g., Amended Complaint, ¶¶125-31, 214, and that document can be considered on a motion to dismiss pursuant to the case law authority cited in footnote 1, supra. The same is true with regard to the B.G. Hearing Disposition (defined above), see, e.g., Amended Complaint, ¶¶137, 145-46, 214, and the Appeal Decision (defined above), see, e.g., id. at ¶¶151-56, 214.

violations.  See Amended Complaint, ¶137; see also Administrative Hearing Disposition, dated August 22, 2018, addressed to B.G. from the Director of the Office of University Community Standards (the "B.G. Hearing Disposition") (a copy of which is attached as Exh. D to the Connolly Affirm.), pp.1-3.

On August 29, 2018, Plaintiff appealed the "Responsible" determination to the Appeals Panel.  See Amended Complaint, ¶148.  By decision dated September 17, 2018 (the "Appeal Decision"), the Appeals Panel denied the appeal.  Id. at ¶¶151-56; Appeal Decision, (a copy of which is attached as Exh. E to the Connolly Affirm.), pp.1-2.

This action was then commenced.

### C. **The Amended Complaint**

The Amended Complaint contains two causes of action.  The first cause of action is brought under 42 U.S.C. §1983, and it alleges a violation of Plaintiff's procedural due process rights under the Fourteenth Amendment to the United States Constitution.  See Amended Complaint, ¶¶193-205.  The second cause of action asserts discrimination based upon sex/gender in violation of Title IX.  Id. at ¶¶207-15.

Plaintiff seeks both damages and equitable relief.  Id. at Wherefore Clause.  With regard to the latter, Plaintiff seeks an injunction directing Defendants to remove all notations on his transcript and record indicating violations of the Conduct Code and all references to the allegations or investigation at issue, including any discipline or sanction.  Id. at Wherefore Clause, ¶1.  He also seeks an injunction prohibiting unspecified further acts of wrongdoing, and a declaration that Defendants violated his constitutional right to due process and right to be free from gender discrimination under Title IX.  Id. at Wherefore Clause, ¶¶2, 5.

6

For all of the reasons set forth below, Defendants' motion to dismiss the Amended Complaint should be granted.

## LEGAL STANDARDS REGARDING A MOTION TO DISMISS

**Failure to State a Claim**:  In order to survive a motion to dismiss under FRCP 12(b)(6), a complaint must allege a plausible set of facts sufficient to "raise a right to relief above the speculative level." Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC., 595 F.3d 86, 91 (2d Cir. 2010) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). As the Supreme Court held in Twombly, the pleading standard in FRCP 8 does not require "detailed factual allegations," but it demands more than unadorned accusations of harm.  550 U.S. at 555.  A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Id.

The Supreme Court provided further elaboration of the pleading standard in Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), stating as follows:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

(Internal quotation marks and citations omitted).

**Lack of Subject Matter Jurisdiction**:  A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it. Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). The standard for reviewing a 12(b)(1) motion to dismiss is essentially identical to the 12(b)(6) standard, except

7

that "[a] plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." Id. at 113.

## ARGUMENT

## POINT I:  MOST OF PLAINTIFF'S CLAIMS UNDER 42 U.S.C §1983 ARE BARRED BY ELEVENTH AMENDMENT IMMUNITY

The Eleventh Amendment to the United States Constitution bars: (a) all Section 1983 claims against the University, regardless of the relief sought; and, (b) the Section 1983 claims for damages and certain equitable relief against Haas and Shane in their official capacities.

The Eleventh Amendment recognizes the fundamental constitutional principle of the sovereign immunity of the states.  It operates to preclude lawsuits in a court of the United States by a citizen of a state against that state, or one of its agencies, absent its consent to such a suit or an express statutory waiver of immunity. See Seminole Tribe of Florida v. Florida, 517 U.S. 44, 54-57 (1996); Papasan v. Allain, 478 U.S. 265, 276 (1986); Green v. Mansour, 474 U.S. 64, 68 (1985).

The University is an agency of New York State.  See Mamot v. Bd. of Regents, 367 Fed. Appx. 191, *192-93 (2d Cir. 2010) (State University of New York entitled to immunity under the Eleventh Amendment as an agency of the State of New York); Dube v. State Univ. of N.Y., 900 F.2d 587, 594-95 (2d Cir. 1990) (Eleventh Amendment extends immunity not only to a state, but also to entities considered arms of the State, such as the University).

The two exceptions to absolute immunity—the state's consent to be sued or Congress's intent to abrogate the state's immunity from suit—must be unmistakably clear and unequivocal. See Seminole, 517 U.S at 55. It is well established that New York has not consented to Section 1983 suits in federal court, and that Section 1983 was not intended to override a state's sovereign immunity.  Mamot, 367 Fed. Appx. 191, *192 (2d Cir. 2010).  Thus, Plaintiff's claims under

8

Section 1983 against the University, regardless of the nature of the relief sought, are barred.  See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984).

The Eleventh Amendment also applies to bar actions for money damages against state officials, like Haas and Shane, who act on behalf of a state.  See Pennhurst, 465 U.S. at 100-01; Kentucky v. Graham, 473 U.S. 159, 169 (1985); Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003).   Moreover, such actions, when commenced under 42 U.S.C. §1983, as is this case, are precluded under the legal principle that state officials acting in their official capacities are not "persons" under Section 1983.  See Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989).

In a narrow exception to the Eleventh Amendment's bar against suing a state official, certain official capacity suits for prospective relief may proceed in federal court.  See Ex parte Young, 209 U.S. 123, 159-60 (1908).  To satisfy Ex parte Young, however, a plaintiff must allege an "ongoing violation of federal law," and he must seek "relief properly characterized as prospective." In re Deposit Ins. Agency, 482 F.3d 612, 618 (2d Cir. 2007).  The exception may not be used to adjudicate the legality of past conduct.  See Papasan, 478 U.S. at 277-78. Retroactive relief, even if styled as equitable in nature, is barred by the Eleventh Amendment.  See Edelman v. Jordan, 415 U.S. 651, 665-68 (1974).

In this case, Plaintiff cannot rely on the Ex parte Young exception to the Eleventh Amendment to allow certain of his requests for equitable relief to proceed.  Specifically, Plaintiff's request for declaratory relief cannot proceed because the declaration he seeks is that his rights were violated in the past in connection with the misconduct proceeding.  See Wherefore Clause, ¶5 (requesting, "A declaration that Defendants **have violated** Plaintiff's Constitutional Rights, Right to Due Process, and Plaintiff's right to be free of gender discrimination under Title IX.") (Emphasis added).   Plaintiff's request for injunctive relief "prohibiting any further acts of wrongdoing or

9

retaliation against [him]," id. at Wherefore Clause, ¶2, also cannot proceed, but for a different reason.  Specifically, the Amended Complaint contains no factual allegations identifying the "further" acts of wrongdoing that Haas and Shane are allegedly committing given that the disciplinary process has been completed.

Accordingly, to the extent that Plaintiff's causes of action under Section 1983 seek damages against Haas and Shane in their official capacities, they are barred by Eleventh Amendment immunity.  The same is true with regard to Plaintiff's requests for retroactive declaratory relief and injunctive relief prohibiting unspecified, potential acts of further wrongdoing.

## POINT II: THE AMENDED COMPLAINT FAILS TO STATE A PLAUSIBLE DUE PROCESS CLAIM

Plaintiff's claim that his procedural due process rights were violated is not plausible because he was given notice of the charges against him and an opportunity to be heard with regard to the same, which is all that due process requires.

### A.  Applicable Law

It is axiomatic that there are two essential requisites of procedural due process: notice and an opportunity to be heard.  See Goss v. Lopez, 419 U.S. 565, 579 (1975) ("students facing suspension and the consequent interference with a protected property interest must be give *some* kind of notice and afforded *some* kind of hearing.").  Reasonably adequate notice must, at a minimum, inform the affected party "what he is accused of doing and what the basis of the accusation is."  Id. at 582; see also Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950) (Due process requires notice that is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."). With regard to the opportunity to be heard, it must occur "at a meaningful time

10

and in a meaningful manner." <u>Mathews v. Eldridge</u>, 424 U.S. 319, 333 (1976). The bar for satisfying this obligation is not high: the United States Constitution only requires "some pretermination opportunity to respond." <u>Cleveland Bd. of Educ. v. Loudermill</u>, 470 U.S. 532, 542 (1985).

In the academic disciplinary context, due process requires that the accused students have the right to respond, but their rights "are not co-extensive with the rights of litigants in a civil trial or with those of defendants in a criminal trial." <u>See</u> <u>Nash v. Auburn Univ.</u>, 812 F.2d 655, 664 (11th Cir. 1987) (citing, among other authority, <u>Goss</u>, 419 U.S. at 583); <u>see also</u> <u>Doe v. Cummins</u>, 662 Fed. Appx. 437, 446 (6th Cir. 2016) (recognizing that "disciplinary hearings against students…are not criminal trials, and therefore need not take on many of those formalities."); <u>Winnick v. Manning</u>, 460 F.2d 545, 549 (2d Cir. 1972) ("Due process does not invariably require the procedural safeguards accorded in a criminal proceeding.").

B. <u>Application of the Law to the Facts Alleged in the Amended Complaint</u>

Plaintiff admits that the University gave him notice of the charges against him, <u>see</u> Amended Complaint, ¶¶63-63, and that he participated in a hearing to respond to and defend against those charges, <u>see</u>, <u>e.g.</u>, <u>id.</u> at ¶¶72, 77-82. Plaintiff contends, however, that his procedural due process rights were violated in that: (1) Shane "arbitrarily" applied the 2017 Conduct Code, instead of the 2018 Conduct Code, <u>see</u> Amended Complaint, ¶70; (2) the parties were not permitted to directly cross-examine one another, but had to submit their questions to Haas, who did the questioning; Haas declined to ask B.G. some of the questions requested by Plaintiff, <u>id.</u> at ¶¶8, 81-86; and, (3) Plaintiff was precluded from cross-examining B.G.'s "most critical witness," A.H., who was not at the hearing and, according to B.G., did not want to participate, <u>id.</u> at ¶¶9, 98-114. None of these alleged procedural deficiencies rises to the level of a constitutional violation.

11

As to (1), there was no arbitrary refusal to apply the 2017 Conduct Code. The underlying sexual encounter occurred on March 5, 2018, see Amended Complaint, ¶26, which was **before** the effective date of the 2018 Conduct Code,[5] and therefore, the 2017 Conduct Code was properly applied. See Appeal Decision, p.2 ("The applicable Code is determined by the date of the incident, therefore the correct Code, effective date August 1, 2017 was applied.").

As to (2), the Conduct Code specifically provides, in pertinent part, as follows: "Parties are prohibited from directly cross examining each other. All questions must be written and directed to the Hearing Officer. All questions must be directly relevant to the incident and policies allegedly violated," and it is up to the Hearing Officer to vet the questions and determine relevance. Conduct Code, §VII, D, 7(b), p.22.

Plaintiff contends that the University's compliance with these provisions violated his due process rights, but similar claims have been soundly rejected by the courts, including the Second Circuit, in the context of academic disciplinary proceedings. See Winnick, 460 F.2d at 549 (rejecting plaintiff's claim that university's refusal to allow him to cross-examine chief complaining witness deprived him of due process, and noting that "[t]he right to cross-examine witnesses generally has not been considered an essential requirement of due process in school disciplinary proceedings."); Doe v. Colgate Univ., 2017 U.S. Dist. Lexis 180267, * 72 (N.D.N.Y. 2017) (holding that plaintiff's claim, that his right to question the complainants was violated because Colgate required parties to submit questions to one another through university official, failed as a matter of law), aff'd on other grounds, 2019 U.S. App. Lexis 1258 (2d Cir. 2019); Yu v. Vassar College, 97 F. Supp.3d 448, 465 (S.D.N.Y. 2015) (rejecting, as a matter of law, plaintiff's

---

[5] A copy of the Code of Student Responsibility, effective August 1, 2018, can be found at the following website: https://www.stonybrook.edu/commcms/studentaffairs/ucs/_pdf/2018-2019%20Code%20of%20Student%20Responsibilty.pdf.

claim that proceedings were unfair because he was required to question the witnesses through the panel chair, who refused to ask many of his questions); see also Nash, 812 F.2d at 664 (holding that there was no denial of plaintiffs' constitutional rights to due process by their inability to question adverse witnesses in the usual, adversarial manner).

As to (3), while Plaintiff makes much of the fact that he was not allowed to question "critical" witness A.H., there are no provisions in the Conduct Code that would require the University to contact, or command the attendance of, a witness who has indicated an unwillingness to participate in the hearing.  Conduct Code, §VII, D, 7(b), p.22; Appeal Decision, p.2.  Indeed, the Conduct Code permits the parties to "question any witness present," Conduct Code, §VII, D, 7(b), p.22, not to question a witness who chooses not to participate in the hearing.  In any event, Plaintiff was not prejudiced by his inability to directly question A.H.  Plaintiff was put on notice of what A.H. said, i.e., A.H. was interviewed by the Title IX investigator and A.H.'s statement was included in the Investigative Report, which Plaintiff admits he received.  See Amended Complaint, ¶¶71, 98-100.  Plaintiff was also given a copy of A.H.'s alleged inconsistent Supplemental Statement.  Id. at ¶¶101-06.  Accordingly, Plaintiff had ample opportunity to respond to A.H.'s statements and to raise alleged inconsistencies in them at the hearing, which he apparently did.  Id. at ¶¶107-08.

Based upon the above, Plaintiff's due process claims fail as a matter of law, and the Section 1983 claims against Haas and Shane should be dismissed.

**POINT III:   EVEN IF THE AMENDED COMPLAINT STATES A PLAUSIBLE DUE PROCESS CLAIM, HAAS AND SHANE ARE ENTITLED TO QUALIFIED IMMUNITY**

Even assuming, *arguendo*, that Plaintiff adequately alleged a deprivation of his procedural due process rights, Haas and Shane are nonetheless protected from liability for civil damages based upon the doctrine of qualified immunity.

13

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011).

A government official's conduct violates clearly established law when, at the time of the challenged conduct, "the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." al-Kidd, 563 U.S. at 741 (internal quotations, alterations and citation omitted)."[E]xisting precedent must have placed the statutory or constitutional question beyond debate." Id. In this Circuit, "a right is clearly established if (1) the law is defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has recognized the right, and (3) a reasonable defendant would have understood from the existing law that his conduct was unlawful." Luna v. Pico, 356 F.3d 481, 490 (2d Cir. 2004).

Here, the Amended Complaint does not identify any Supreme Court or Second Circuit case law recognizing a due process right to the procedural protections that Plaintiff seeks. While Plaintiff claims the 2018 Conduct Code should have been applied (instead of the one in effect when the underlying sexual encounter occurred), Plaintiff does not cite any authority to support the existence of a due process right to the same. The Amended Complaint does cites Doe v. Baum, 903 F.3d 575 (6th Cir. 2018), to support the proposition that Plaintiff had a due process right to cross-examine B.G. and A.H. See Amended Complaint, ¶150. The Baum case, however, was rendered by a different Circuit court after the incident and hearing in the instant case. Moreover, Baum contradicts the general rule articulated by the Second Circuit, that such cross-examination is not an essential due process requirement in academic disciplinary proceedings. See Winnick,

14

460 F.2d at 549; see also cases cited at Point II, B, supra. In fact, the Winnick decision tends to show that the procedural protections Plaintiff sought were not clearly established law.

District courts in both this Circuit and other Circuits have found that individually named school officials were entitled to qualified immunity from liability on procedural due process claims similar to the instant ones. See, e.g., Patrick v. Success Acad. Charter Schs., Inc., 354 F. Supp.3d 185, 203-06 (E.D.N.Y. 2018) (granting motion to dismiss as to individual defendants on procedural due process claims because, among other reasons, there was no Supreme Court or Second Circuit case law recognizing a procedural due process right to a transcript or sworn testimony in connection with a school suspension hearing, or establishing the burden of proof in such a hearing); Doe v. Univ. of Colo., 255 F. Supp.3d 1064, 1083-84 (D. Colo. 2017) (plaintiff had no clearly established right to be free from the alleged procedural deprivations he suffered in connection with academic disciplinary proceeding); Marshall v. Ohio Univ., 2015 U.S. Dist. Lexis 155291, *41 (S.D. Ohio 2015) (recognizing that although some courts have concluded that university students have procedural due process rights related to the disciplinary proceeding, "the existence and contours of those rights appear to remain an issue of judicial debate.").

This Court should hold in a like manner, and dismiss Haas and Shane from this litigation.

## POINT IV: PLAINTIFF'S TITLE IX CLAIMS[6] ARE DEFICIENT

Plaintiff contends that he was subjected to disparate treatment in the misconduct proceeding based upon his sex/gender, which violated Title IX. As discussed below, however, Plaintiff's Title IX claims are defective: (a) as against Haas and Shane, because there is no individual liability under that statute; and (b) as against the University, because the Amended

---

[6] Congress expressly abrogated the states' sovereign immunity for Title IX claims. See Vega v. State Univ. of N.Y. Bd. of Trustees, 67 F. Supp.2d 324, 340 (S.D.N.Y. 1999) (citing 42 U.S.C. §2000d-7).

15

Complaint does not allege sufficient facts to support a plausible inference of gender-based discrimination.

## A. **There is no Individual Liability under Title IX**

Title IX applies to institutions and programs that receive federal funds, 20 U.S.C. §1681(a), and "it has consistently been interpreted as not authorizing suit against school officials, teachers, and other individuals." Fitzgerald v. Barnstable Sch. Comm., 555 U.S. 246, 257 (2009). "Numerous district courts within the Second Circuit… have held that there is no individual liability under Title IX." Miotto v. Yonkers Pub. Schs., 534 F. Supp.2d 422 (S.D.N.Y. 2008) (collecting cases). Indeed, the "overwhelming majority" of federal courts that have addressed the issue have held that "only the institutional recipient of federal funds can be held liable under Title IX." Tesoriero v. Syosset Centr. Sch. Dist., 382 F. Supp.2d 387, 396 (E.D.N.Y. 2005); see also Welcome v. N.Y.C. Dep't of Educ., 2018 U.S. Dist. Lexis 190716, *10-11 (E.D.N.Y. 2018) (dismissing Title IX claim brought against school principal in both her individual and official capacity because a school principal "cannot be held individually liable under Title IX because Title IX does not provide for individual liability"). Thus, Plaintiff's Title IX claims against Haas and Shane, in both their official and individual capacities, should be dismissed.

## B. **The Factual Allegations in the Amended Complaint Do Not Support a Plausible Title IX Claim Against the University**

### 1. **Applicable Law**

Under Title IX, "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education or activity receiving Federal financial assistance…." 20 U.S.C. §1681(a). This provision, which is enforceable through an implied private right of action, was enacted to supplement the bans under the Civil Rights Act of 1964 on racial discrimination in the workplace

and in universities.  See Doe v. Columbia Univ., 831 F.3d 46, 53 (2d Cir. 2016).  "Because Title IX prohibits (under covered circumstances) subjecting a person to discrimination on account of sex, it is understood to bar the imposition of university discipline when gender is a motivating factor in the decision to discipline." Id. (quoting Yusuf v. Vassar College, 35 F.3d 709, 715 (2d Cir. 1994)).

Cases challenging university disciplinary proceedings on the ground of gender bias "fall generally within two categories." Yusuf, 35 F.3d at 715. In the first category, "erroneous outcome" cases, "the claim is that the plaintiff was innocent and wrongly found to have committed an offense." Id.  In the second category, "selective enforcement" cases, the "claim asserts that, regardless of the student's guilt or innocence, the severity of the penalty and/or the decision to initiate the proceeding was affected by the student's gender." Id. Under both theories, a plaintiff must plead and prove that "the complained-of conduct was discriminatory." Id.  With respect to the element of discriminatory intent, a complaint under Title IX alleging discrimination on account of sex in the imposition of university discipline is sufficient if it "pleads specific facts that support a minimal plausible inference of such discrimination." Columbia Univ., 831 F.3d at 56.

The Amended Complaint does not specifically designate which type of claim Plaintiff brings.  However, whether viewed as an erroneous outcome case, a selective enforcement case, or both, the Title IX claim fails because Plaintiff has not plausibly alleged facts supporting an inference of gender bias—a requirement for each type of claim.

### 2.  Application of the Law to the Facts Alleged in the Amended Complaint

The Amended Complaint is devoid of the kinds of allegations from which gender bias could be inferred, such as "statements by members of the disciplinary tribunal, statements by pertinent university officials, or patterns of decision-making…"  Yusuf, 35 F.3d at 715. For

17

example, Plaintiff does not identify any statements by University officials, the Review Panel, or anyone else associated with the misconduct proceeding to suggest that they held anti-male biases. Likewise, there are no facts in the Amended Complaint suggesting a pattern of biased decision-making by the University.

Nor are there factual allegations suggesting an anti-male bias resulting from public and/or government pressure, as there was in the case of <u>Columbia Univ.</u>, 831 F.3d at 57-58. There is no allegation, for instance, that in the weeks leading up to the misconduct proceeding, the University, the Title IX investigator, or any other of its officials had faced the kind of "substantial criticism" that Columbia University faced for its handling of Title IX investigations.

Plaintiff attempts to show gender bias by attacking the bases for the Review Panel's finding that he was "Responsible" for violating the Conduct Code. <u>See</u> Amended Complaint, ¶¶126-135. He contends that the "Responsible" finding was not supported by "any credible evidence," <u>id.</u> at ¶127, but this self-serving and conclusory allegation is contradicted by even a cursory review of the Plaintiff Hearing Determination.[7]  That determination makes clear that the Review Panel heard testimony from both B.G. and Plaintiff, and reviewed B.G.'s. and Plaintiff's complaints, the Investigative Report, text messages between the two, B.G's social media posts, messages between B.G. and others, and witness statements. <u>See</u> Plaintiff Hearing Determination, p.2.  Based upon their consideration of this information, the Review Panel concluded that it was more likely than not that anal penetration occurred and that it was without consent. <u>Id.</u> at pp.2-3.  Even aside from the fact that the Review Panel's decision was evidence-based, Plaintiff has not alleged any facts

---

[7]  Allegations that are contradicted by documents relied upon or incorporated by reference in a complaint are insufficient to defeat a motion to dismiss. <u>See</u> <u>Matusovsky v. Merrill Lynch</u>, 186 F. Supp.2d 397, 399-400 (S.D.N.Y. 2002).

18

to show that the Panel's reasons for finding Plaintiff "Responsible" related, in any way, to gender bias.

Contrary to Plaintiff's contention, the fact that the Review Panel reached a different conclusion with regard to Plaintiff's complaint against B.G. (i.e., finding her "Not Responsible" for Conduct Code violations) does not suggest gender bias. See Amended Complaint, ¶¶137-47. After considering all of the information presented at the hearing, which included Plaintiff's detailed description of the events of the night, the Review Panel concluded that there was "insufficient evidence to determine that [Plaintiff] was intoxicated such that he was unable to give consent…." B.G. Hearing Determination, p.2. Although Plaintiff may disagree with how the Review Panel evaluated the evidence, reasonable individuals can weigh the same evidence differently, and this in and of itself, does not suggest bias. Indeed, Plaintiff has set forth no facts to support his speculation that gender was the "sole cause" for the different conclusions, see Amended Complaint, ¶147.

Plaintiff claims that the University applied the procedural rules of the Conduct Code in a disparate way based on gender, see, e.g., Amended Complaint, ¶10, but the factual allegations do not support this contention. For example, Plaintiff alleges that he was not allowed to question A.H., whom he viewed as a critical third-party witness, because B.G. notified Haas that A.H. did not want to be a participant in the hearing. Id. at ¶¶108-12. There are no facts alleged, however, showing that a female accused of sexual misconduct would have been granted the opportunity to question a witness not present at the hearing, who indicated an unwillingness to participate.

Plaintiff also complains that the 2017 Conduct Code was applied, instead of the 2018 Conduct Code. Once again, there are no facts showing that the University would have applied the

19

latter Code in a proceeding involving a female accused of sexual misconduct based on an incident that occurred before the effective date of the 2018 Conduct Code.

Because the 2017 Conduct Code applied, Plaintiff contends that he could not submit certain text messages between himself and B.G., but he admits that he sought to introduce these in an untimely manner (i.e., not within the five-day period specified in the Conduct Code, §VII, D, 4(g)). Plaintiff further argues that B.G. was allowed to call a witness whom she did not give notice of within the same five-day time frame. Id. at ¶¶90-95. As a threshold matter, it is questionable as to whether the two situations are even comparable (e.g., the University has control over setting a date by which written evidence must be submitted in advance of a hearing, but may not have the same degree of control over whether a witness will/will not participate). Moreover, there are no factual allegations in the Amended Complaint to the effect that either: (1) a female accused of sexual misconduct would have been allowed to submit untimely written information for consideration at the hearing, or (2) a male accused of sexual misconduct would have been precluded from calling a witness not identified within the five-day period.

Nor can gender bias plausibly be inferred by Plaintiff's allegations that B.G. was treated more favorably during the hearing—i.e., she was allegedly given "a lot of leeway," was "guide[d] along the way," and was questioned in a gentler manner than he was, see, e.g., Amended Complaint, ¶¶115-24. Courts have rejected similar claims, stating that at most, these allegations suggest a bias in favor of alleged victims of sexual misconduct (who can be female or male), and not bias based on gender. See, e.g., Cummins, 662 Fed. Appx. at 453 (alleged deficiencies in the disciplinary process "at most show a disciplinary system that is biased in favor of alleged victims and against those accused of misconduct. But this does not equate to gender bias because sexual-assault victims can be both male and female."); Doe v. Columbia Coll. Chi., 299 F. Supp.3d 939,

20

955 (N.D. Ill. 2017) (allegations that alleged perpetrator was questioned more aggressively during university disciplinary hearing than the complainant are indicative, "at best, of a bias in favor of sexual assault complainants and against those accused of sexual assault, regardless of gender.").

Since the Amended Complaint fails to raise a plausible inference of gender bias, the Title IX claim should be dismissed. See, e.g., B.B. v. New Sch., 2018 U.S. Dist. Lexis 80068, *14-23 (S.D.N.Y. 2018) (holding that plaintiff failed to allege sufficient facts from which the court could infer that defendant's disciplinary proceedings were motivated by gender bias, and differentiating cases in which court have held Title IX claims cognizable); see also Univ. of Colo., 255 F. Supp.3d at 1076-79 (applying Columbia Univ., 831 F.3d at 54-56, and finding no inference of gender bias that rises to the level of plausible).

## CONCLUSION

For the reasons set forth above, it is respectfully requested that this Court dismiss the Amended Complaint.

Dated: Hauppauge, New York
       May 29, 2019

                                 LETITIA JAMES
                                 Attorney General for the State of New York
                                 Attorney for the Defendants

                                 By: _____
                                    SUSAN M. CONNOLLY
                                    Assistant Attorney General
                                    300 Motor Parkway, Suite 230
                                    Hauppauge, New York 11788
                                    Susan.Connolly@ag.ny.gov
                                    (631) 231-2424

21

STATE OF NEW YORK )
                       )   SS.:
COUNTY OF SUFFOLK )

       HELEN ORLOWSKI, being duly sworn, deposes and says: deponent is not a party to the action, is over 18 years of age and is employed in the office of LETITIA JAMES, Attorney General of the State of New York, attorney for defendant.  On May 29, 2019, she served a copy of the enclosed Memorandum of Law in Support of Defendant's Motion to Dismiss the Amended Complaint upon the following named person:

                       GOMBERG LEGAL, P.C.
                       Attorney for Plaintiff
                       By:  Stanislav Gomberg, Esq.
                       1001 Avenue of the Americas, Suite 1222
                       New York, New York 10018

the addresses designated by said persons for that purpose by UPS Overnight Mail.

                       HELEN ORLOWSKI

Sworn to before me this
29th day of May, 2019

PATRICIA M. HINGERTON
Assistant Attorney General