UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X
JOHN DOE,

                             Plaintiff,

-against-

TRACY HAAS, SUZANNE SHANE, and
THE STATE UNIVERSITY OF NEW YORK
AT STONY BROOK,

                            Defendants.
------------------------------------------------------X

**MEMORANDUM & ORDER**
19-CV-0014 (DRH)(AKT)

**APPEARANCES:**

**For Plaintiff:**
Gomberg Legal, P.C.
1001 Avenue of the Americas, Suite 1222
New York, New York, 12222
By:    Stanislav Gomberg, Esq.

**For Defendants:**
Letitia James
Attorney General of the State of New York
300 Motor Parkway, Suite 320
Hauppauge, New York 11788
By:    Susan M. Connolly, Assist. Attorney General

**HURLEY, Senior District Judge:**

        Plaintiff, John Doe ("Plaintiff" or "Doe")[1] commenced this action against Tracy Haas

("Haas"), Suzanne Shane ("Shane") and the State University of New York at Stony Brook

("SBU") (collectively "Defendants") asserting claims for due process violations pursuant to 42

U.S.C. § 1983 and for sex and gender discrimination under Title IX of the Education

Amendments of 1972, 20 U.S.C. § 1681, et seq. ("Title IX") in connection with an

administrative disciplinary proceeding brought against him pursuant to SBU's Code of Student

---

[1] By Order dated March 20, 2019, the Court granted Plaintiff's application to proceed as John Doe and to identify the female complainant in the underlying misconduct proceeding as "B.G."

Responsibility (the "Code").[2] Presently before the Court is Defendants' motion to dismiss the amended complaint pursuant to Rule 12(b)(1) and 12(b)(6) of Federal Rules of Civil Procedure. For the reasons set forth below the motion is granted in part and denied in part.

## BACKGROUND

The following allegations are taken from the Amended Complaint ("AC" or "Complaint") and presumed true for purposes of this motion.

### A. Events Leading to the Disciplinary Hearing

During his first year at SBU Plaintiff rejected several romantic advances by BG, a female classmate. However, "one late night, on March 5, 2018, when Plaintiff was highly intoxicated," and incapable of giving consent, "BG invited herself to Plaintiff's dorm room and initiated sexual intercourse." The next day, "BG messaged Plaintiff about the sexual episode and quickly grew frustrated." Although she admitted that "the sexual episode began and ended on terms she consented with, she accused Plaintiff in a text of attempting non-consensual anal intercourse" while the two were in the "doggy style" position. After indicating that he neither remembered nor believed this incident occurred, Plaintiff stopped responding. BG then threatened "[i]f you don't respond I'm going to report you." In response, Plaintiff reminded her he was highly intoxicated the prior night and that he was unaware of such an incident. BG proceeded to tell Plaintiff he was "bad in bed," after which Plaintiff no longer responded to BG. (AC ¶ 3-4; 24-53.)

---

[2] A copy of the Code is Ex. B to the Connolly Affirmation. Consideration of the Code is proper in this case in accordance with the standard enunciated *infra* for consideration of materials outside a complaint on as Rule 12(b)(6) motion. Plaintiff must have "reli[ed] on the terms and effect of [the] document in drafting the complaint," *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002), given the allegations regarding Defendants failing to adhere to the procedures set forth in the Code.

Five days later, BG filed a complaint against Plaintiff with SBU alleging non-consensual intercourse. Plaintiff filed a cross-complaint based on his own inability to consent to intercourse on account of his "considerable intoxication." At about the same time, BG published a public post on social media "with Plaintiff's name, image, and a caption describing Plaintiff as her 'rapist' and inciting others to 'beat [Plaintiff] up", a violation of SBU's Code. (AC ¶¶ 5-6, 54-61 (brackets in original).)

On July 31, 2018 Plaintiff received the Notice of Charges and Notice of Review Panel Hearing ("Notice of Hearing") scheduled for August 10, 2018. The Notice of Charges identified the charges for both BG and Plaintiff as sections VII(C)(5)(b) (nonconsensual sexual contact) and VII(C)(5)(c) (nonconsensual sexual intercourse) of the Code. (AC ¶¶ 63-64.)

**B.    The Code Procedures**

The Code sets forth both rules of student conduct and an administrative process to be followed when a violation of its provisions has been alleged. Section VII of the Code sets forth the policy and procedure for Sexual Misconduct. It contains a listing of the behaviors that constitute sexual misconduct. (Code at §VII(C)(5).)

The Code contain both pre-hearing and hearing procedures. The University is required to "conduct a timely review of all complaints of sexual misconduct," the review and resolution of which, absent extenuating circumstances, is expected to take place within sixty (60) days of receipt of the complaint. (Code at § VII(D)(1).) Investigations are to be conducted by a University Investigator and include interviews with the parties and witnesses. When the investigation is complete, a report is prepared, which report both complaint and respondent are "permitted to review prior to the hearing." (Id. at § VII(D)(4). Parties are permitted to have an advisor, who may be an attorney, but advisors are not permitted to make presentations or

arguments at the hearing.  The Notice of Hearing informed Plaintiff of these rules and he

retained an attorney as his advisor. The notice included instructions for submission of evidence

pre-hearing. (AC ¶¶65-68.) According to those instructions, information in support or defense of

the allegations that will be presented at the hearing must be provided by both complainant and

respondent to the Office of University Community Standards five (5) days in advance of the

scheduled hearing. If information has not been so provided the official presiding at the Review

Panel may exclude it or adjourn the hearing; the presiding official makes the final decision

relating to the admissibility of all information. "Written statements [concerning] the allegations

may be considered[, but] [f]irst hand oral testimony will be given greater weight than hearsay

testimony."  All written information that will be presented at the hearing is made available to the

parties 48 hours prior to the hearing. (Code at §VII(D)(4).)

The Code provides that parties "are prohibited from directly cross examining each other.

All questions must be written and directed to the Hearing Officer . . . [and] be directly relevant to

the incident and policies alleged. The Hearing Officer will ensure that improper questions are

dismissed as such." Each party may ask questions regarding the investigation summary or report

and question any non-party witnesses present. (Code at §VII(D)(7). After the Hearing Officer

reads or summarizes the investigation report, the complainant may begin with an opening

statement and present all information in support of the allegations. The respondent, then the

Review Panel may question the complainant. Respondent then makes an opening statement and

presents all information in defense of the allegations. The complainant, then the Review Panel

members may question the respondent. The hearing officer then introduces witnesses and asks

for their statement. Witnesses are then questioned by the complainant, then the respondent, then

the Review Panel. Only written statements from character witnesses are permitted. After all

witnesses and questioning is concluded, the respondent then the complainant give a closing statement. No questioning is allowed during or after closing statements. (*Id.*)

## C.     The Hearing

On August 2, 2018, the Doe's advisor alerted Shane, "the associate managing counsel" for SBU, that the procedures set forth in the Notice of Hearing were not in conformity with SBU's then operative code for Title IX Hearings (the "2018 Code"). Whereas the 2018 Code allowed for a respondent to access SBU's Title IX Investigator's Report five (5) days prior to the hearing and to submit rebuttal evidence within two days of the hearing, the rules in the Notice of Hearings stated that the Investigative Report would be available to the parties only (2) days prior to the Hearing and that all evidence must be submitted at least five days before the hearing with no opportunity to submit rebuttal evidence after reviewing the Investigative Report. Shane refused to follow the 2018 Code, instead "arbitrarily choosing to follow the prior year's procedures that were no longer in effect." This result in Plaintiff's inability to present certain text messages as rebuttal evidence. (AC ¶¶ 16, 69-71.)

A one-day hearing was held on August 10, 2018, almost five months after the initial filing of the charges. After introducing all the parties, Haas, the "Title IX Review Panel Hearing Officer" who was tasked with running the proceedings, advised that if either party or their advisor engaged in any communication toward the other party, they would be removed from the hearing room, with the hearing continuing in their absence, and informed Plaintiff's advisor that he could not engage in any verbal presentation or questioning. Haas then introduced the three-member Review Panel, whose role was comparable to a jury, and consisted of SBU faculty and staff. Shane was also present "within the hearing room" during the hearing. (AC ¶¶ 16,72-76.)

The first witness was SBU's Title IX Investigator who gave a summary of her report and answered questions. BG then made her opening statement "in which she largely compared Plaintiff's behavior to that of notorious felons." Plaintiff then gave his opening statement "expressing that he had no recollection of the alleged non-consensual anal penetration and that he would not have consented to the sexual episode at all if he were sober." The parties were then permitted to submit to Haas the questions they wanted asked of the opposing party. The parties were not permitted to directly cross-examine one another. Haas "refused or failed to pose numerous questions to BG" that Plaintiff requested, "ostensibly on the basis or 'relevance' and 'appropriateness.'" Examples of the questions submitted by Plaintiff that Haas did not ask include:

- " '"Did you think there was a chance that Plaintiff would reject your advances towards sex?" (This was critical because Plaintiff believes that BG knew that if Plaintiff was sober, he would not have agreed to inviting her over to his dorm so late.);
- "When did you first think about filing a Title IX complaint?" (The timing of BG's decision to file her complaint is critical because while BG claims that she came to the decision after being urged to do so by others, Plaintiff sought to prove BG made this decision at or around the time of the sexual encounter on account of Plaintiff's failure to reciprocate emotional affection.);
- "Why, did you put on [as you stated within your posted online article] your 'cutest underwear' [prior to visiting Plaintiff]?" (Plaintiff's belief is that BG made an intentional effort to sexually engage Plaintiff with indifference towards his consent as she had no reason to believe consent would be granted based on their prior interactions and Plaintiff's denials, yet she clearly prepared for sex anyways.).

(AC ¶ 85.) Also, by being required to submit written questions to Haas, which "Haas sorted and rephrased prior to posing them, Plaintiff did not have the opportunity to ask timely follow up questions of BG," all of which purportedly denied Plaintiff an opportunity to confront his accuser. As to the questions that were posed, "BG's response demonstrated her complete lack of credibility," with alleged examples thereof set forth in the Complaint. (AC ¶¶ 77-88.)

The procedural rules of the SBU Code were also allegedly applied inconsistently. After having submitted various pieces of evidence prior to the five day cutoff set forth in the 2017 Code, Plaintiff determined there was additional evidence he needed to submit after receiving and reviewing the Investigator's report but his proposed submission was refused as untimely. However, BG's untimely evidence was accepted. For example, Plaintiff's objection to one of the witnesses called by BG on the grounds that BG failed to provide notice of the witness within the applicable five-day time frame was not sustained. When Plaintiff later renewed his objection and again requested that the text messages between himself and BG , notice of which was given to the Review Panel two days in advance of the hearing, be considered since BG was permitted to produce a witness without any prior notice, Haas responded "[w]itnesses are not evidence." BG was also permitted to introduce various character witnesses in contravention of the SBU Code's prohibition of character witness testimony during the hearing. (AC ¶¶89-97.)

Plaintiff was also not permitted to cross-examine BG's most critical third-party witness – "AH." AH is a male friend of BG's. After leaving Plaintiff's dormroom the night of the incident at approximately 3:00 am, BG messaged AH and asked to visit his dorm room immediately. AH was interviewed by SBU's Investigator and the notes of the interview were part of the Investigator's report concerning the cross complaints. "The Investigator's report reflects that AH made no mention of any nonconsensual sexual activity, including anal penetration." "Yet, prior to the Hearing, BG submitted [to the Review Panel] an undated supplemental written statement purportedly authored by AH," which was "undated and failed to include any notary stamp or verification of AH's signature or identity." This supplemental statement described interactions and conversation with BG in the early morning hours of March 6, 2018 and was "extremely inconsistent with the Investigator's interview notes." In addition to omitting portions of the

conversation between him and BG that were in the Investigator's notes, "AH did (for the first time) make reference to BG's allegation of anal penetration." It was considered competent evidence despite the fact that BG admitted at the hearing that the supplemental statement was authored at BG's direction and that she explicitly directed AH to include a reference to anal intercourse in it. (AC ¶¶ 98-107.)

In view of the discrepancies, Plaintiff requested that AH be called as a witness at the hearing. The review Panel initially requested BG produce AH's contact information. However, BG protested, "He does not want to – we can't." Without further inquiry, Haas stated that BG was right and the Panel could not compel testimony. No attempt to contact AH was made. (AC ¶¶ 108-113.)

There was also what Plaintiff claims was "egregious disparate treatment." For example, when BG had difficulty answering questions or provided non-responsive answers, Haas assisted BG by guiding her and suggesting answers, but Plaintiff was not assisted with any of his response during questioning. Haas and the Review Panel assisted BG by providing suggestive follow-up questions when BG introduced conflicting testimony, but "asked Plaintiff questions designed to entrap Plaintiff into conceding certain portions of BG's prior written version of events." Whereas Haas and the Review Panel provided encouragement to BG and encouraged her to take her time, Plaintiff was denied a 45-minute break, after the full day of proceeding, to prepare his closing statement. "In short, the transcript shows that Defendants operated as BG's allies throughout the Hearing and as Plaintiff's adversaries." Finally, Haas permitted BG to verbally assault Plaintiff during her closing argument while acknowledging that the verbal offensive ran afoul of SBU's Code. (AC ¶¶ 114-124.)

**D.     The Disposition**

On August 22, 2018, SBU issued the Disposition of Hearing to Plaintiff, informing him of the finding of his Responsibility to the charges and the University's rational therefore. Three bases for provided for concluding that anal penetration occurred and that it was nonconsensual: (1) the "similarities of the parties' accounts up until the point of [alleged] anal penetration;" (2) Plaintiff "acknowledged that his penis 'slipped'"; and (3) plaintiff "conceding 'it may have been a mistake;'" each of which Plaintiff challenges as unsupported by the evidence at the hearing. (AC ¶¶ 125-144.).)

SBU also failed to find BG "Responsible" of any violations even thought there was uncontroverted evidence that Plaintiff was too intoxicated to consent and BG knew he was intoxicated, including BG's own online Blog, BG's text messages with several of her acquaintances, and the testimony of Plaintiff's two witnesses, one of whom testified that BG admitted Plaintiff was not sober. In addition, BG was not held responsible for any SBU violations "notwithstanding the uncontroverted evidence in the form of her Instagram post that openly incited violence against Plaintiff, which BG admitted to authoring." (AC ¶¶ 141-146.)

**E.     The Appeal**

Plaintiff filed an appeal from the "Responsible" determination to SBU's Community Standards Appeals Board and Shane, who "operates" that board. Among other things, the appeal claimed the Review Panel's determination was improper because (a) there was insufficient evidence;  (b) Plaintiff was denied the opportunity to question a critical witness; ( c) Plaintiff was denied an opportunity to cross-examine BG, citing the 6th Circuit's then recent decision in *Doe v. Baum*, 903 F.3d 575 (6th Cir. 2018) which, it is alleged, held that "the failure to allow cross-examination of  complainant and their witnesses in a University sexual misconduct hearing

constitutes a clear due process violation;" and (d) Defendant SBU failed to follow its own Code and procedures. On September 17, 2018 Shane and the Board upheld the Review Panel's decision. (AC ¶¶148-156.)

As a result, Plaintiff was suspended from the University, placed on disciplinary probation, stripped of his Presidential Scholarship, and his record and transcript permanently marked with a notation demonstrating a sexual misconduct violation. (AC ¶¶185-190.)

## DISCUSSION

### I. Applicable Standards

#### A. Federal Rule of Civil Procedure 12(b)(1)

A case may properly be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) "when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir.2000). It is also the proper vehicle for arguments that a defendant is protected by sovereign immunity. *Wake v. United States*, 89 F.3d 53, 57 (2d Cir.1996).

"In contrast to the standard for a motion to dismiss for failure to state a claim under Rule 12(b)(6), a 'plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists.'" *MacPherson v. State St. Bank & Trust Co.*, 452 F. Supp. 2d 133, 136 (E.D.N.Y. 2006) (quoting *Reserve Solutions Inc. v. Vernaglia*, 438 F. Supp. 2d 280, 286 (S.D.N.Y. 2006)), *aff'd*, 273 F. App'x 61 (2d Cir. 2008); *accord Tomaino v. United States*, 2010 WL 1005896, at *1 (E.D.N.Y. Mar. 16, 2010). "In resolving a motion to dismiss for lack of subject matter jurisdiction, the Court may consider affidavits and other materials beyond the pleadings to resolve jurisdictional questions." *Cunningham v. Bank of New York Mellon*,

*N.A.*, 2015 WL 4101839, * 1 (E.D.N.Y. July 8, 2015) (citing *Morrison v. Nat'l Australia Bank, Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008)).

**B.      Federal Rule of Civil Procedure 12(b)(6)**

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a cause of action, a court should "draw all reasonable inferences in Plaintiff['s] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). The plausibility standard is guided by two principles. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)); *accord Harris v. Mills*, 572 F.3d 66, 71–72 (2d Cir. 2009).

First, the principle that a court must accept all allegations as true is inapplicable to legal conclusions. Thus, "threadbare recitals of the elements of a cause of action supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678. Although "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 679. A plaintiff must provide facts sufficient to allow each named defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery.  *See Twombly*, 550 U.S. at 555.

Second, only complaints that state a "plausible claim for relief" can survive a motion to dismiss. *Iqbal*, 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but asks for more than a sheer possibility that defendant acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line' between

possibility and plausibility of 'entitlement to relief.' " *Id*. at 678 (quoting *Twombly*, 550 U.S. at 556-57) (internal citations omitted); *see In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007).  Determining whether a complaint plausibly states a claim for relief is "a context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679; *accord Harris*, 572 F.3d at 72.

"In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration 'to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken.'" *Leonard F. v. Israel Disc. Bank of New York*, 199 F.3d 99, 107 (2d Cir. 1999) (quoting *Allen v. WestPoint–Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991)); *see Weiss v. Village of Sag Harbor*, 762 F. Supp. 560, 567 (E.D.N.Y. 2011) (in deciding a motion to dismiss a court is entitled to consider, inter alia, "documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference" and "documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint").  A document may be considered on a motion to dismiss where the plaintiff has "reli[ed] on the terms and effect of [the] document in drafting the complaint." *Chambers v. Time Warner, Inc*., 282 F.3d 147, 153 (2d Cir. 2002) (emphasis omitted). Such reliance "is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough." *Id*.; *see Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006) (integral documents may include documents partially quoted in complaint or on which plaintiff relied in drafting complaint).

## II.    Eleventh Amendment Immunity

In this case, Defendants assert that Eleventh Amendment immunity requires dismissal of all of Plaintiff's § 1983 claims against SBU and the §1983 claims against Haas and Shane in their official capacities. Plaintiff concedes his § 1983 claim against SBU is barred (see Pl.'s Opp. Mem. at 10 n.4), and therefore it is dismissed. He maintains however, that he may pursue his §1983 claims for injunctive relief against Haas and Shane in their official capacities.[3]

The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

> It has long been settled that the reference to actions against one of the United States encompasses not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities. Thus, when the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants.

*Ford v. Reynolds,* 316 F.3d 351, 354 (2d Cir. 2003) (quoting *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997).  The Eleventh Amendment generally prohibits suits against state governments in federal court. *Richardson v. New York State Dep't Correctional Serv.,* 180 F.3d 426, 447–48 (2d Cir.1999) (citing *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 106, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984)). This jurisdictional bar extends to a state entity that is an "arm of the State." *See Northern Ins. Co. of N.Y. v. Chatham County, Ga.*, 547 U.S. 189

---

[3] The "Wherefore" clause in the AC seeks compensatory and punitive damages but does not specify the defendant(s) from whom they are sought. To the extent Plaintiff seeks such damages from Hass and Shane in their official capacity, he has abandoned any such claims by not addressing them in his opposition to the instant motion. S*ee, e.g., Wilkov v. Ameriprise Fin. Servs. Inc*., 753 F. App'x 44, 47 n.1 (affirming district court's dismissal of claims on the grounds they were abandoned when plaintiff failed to oppose them in her opposition to motion to dismiss). Moreover, they are barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985); *Ford v. Reynolds,* 316 F.3d 351, 354 (2d Cir. 2003). *See also Will v. Michigan Dep't of State Police*, 491 U.S. 58,71 (1989) (state officials acting in their official capacities are not "persons" under Section 1983).

(2006), It also bars an award of damages against state officials in their official capacity. *See Ford v. Reynolds*, 316 F.3d 351, 354 (2d Cir. 2003).

Certain official capacity suits for prospective relief, however, not barred by the Eleventh Amendment. "[A] limited exception to the general principle of sovereign immunity allows a suit for injunctive relief challenging the constitutionality of a state official's action in enforcing state law under the theory that such a suit is not 'one against the State.' and therefore not barred by the Eleventh Amendment*." CSX Transp. v. N.Y. State Office of Real Prop. Servs.*, 306 F.3d 87, 98 (2d Cir. 2002) (quoting *Ex Parte Young*, 209 U.S. at 154). "A plaintiff may avoid the Eleventh Amendment bar to suit and proceed against individual state officers, as opposed to the state, in their official capacities provided that his complaint (a) 'alleges an ongoing violation of federal law' and (b) 'seeks relief properly characterized as prospective.'" *In re Deposit Ins. Agency*, 482 F.3d 612, 618 (2d Cir. 2007) (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)).

The Complaint seeks a declaratory judgment only as to conduct that occurred in the past, i.e., "a declaration that Defendants have violated Plaintiff's constitutional Rights, right to Due Process and Plaintiff's right to be free of gender discrimination under Title IX." (AC. at p. 35, Wherefore ¶ 5.) There is no assertion of an ongoing violation and therefore the claim for declaratory relief against Haas and Shane is properly dismissed. *Cf. KM Enterprises, Inc. v. McDonald*, 518 F. App'x 12, 13 n.1 (2d Cir. 2013) ("Eleventh Amendment prevents federal courts from providing any relief that is 'not the type of remedy designed to prevent ongoing violations of federal law,' including declaratory judgments that past acts were unlawful.") (quoting *Green v. Mansour*, 474 U.S. 64, 71-73 (1985)). Similarly, Plaintiff's request for an injunction "directing Defendants remove all notations on Plaintiff's transcript and record

indicating violations of SBY's Code, and [the] removal of any and all references to the allegations or investigation at issue, including any discipline or sanctions, from Plaintiff's files and records" and "prohibiting any further acts of wrongdoing or retaliation against Plaintiff;" (Compl. at p. 35, Wherefore ¶¶ 1, 2), does not survive Defendants' Eleventh Amendment challenge because the relief sought is not prospective. Rather it is designed to compensate for an alleged past violation of federal law. *See Clark v. Dinapoli*, 510 F. App'x 49, 51 (2d Cir. 2013) (request for injunctive and declaratory relief for due process violations did not fall within *Ex Parte Young* as plaintiff alleged injuries stemming only from past conduct with no plausible threat of future violations); *KM Enterprises, Inc. v. McDonald*, 2012 WL 4472010, * 7 (E.D.N.Y. Sept. 25, 2012) ("If a complaint is based entirely upon past acts and does not allege continuing conduct that, if stopped, would provide a remedy to plaintiff, then it does not implicate *Ex Parte Young*."), *aff'd*, 518 F. App'x. 12 (2d Cir. 2013); *accord McKenna v. Dinapoli*, 2016 WL 7413490, * 5 (E.D.N.Y. Dec. 22, 2016) (holding that a request for "a permanent injunction enjoining and restraining the defendants from future retaliation against plaintiff and from future interference with [his] constitutionally protected right to his public pension[,]" is barred by the Eleventh Amendment because it did not allege an ongoing violation of federal law).

Accordingly, the motion to dismiss the § 1983 claims asserted against SBU and against Haas and Shane in their official capacities is granted.

## III.     § 1983 Claims Against Haas and Shane in Their Individual Capacities

Defendants Haas and Shane seek dismissal of the remaining § 1983 claims against them on two grounds. First, they maintain that Plaintiff has failed to allege a plausible due process claim. Second, they assert they are entitled to qualified immunity.

**A.**     **Whether Plaintiff Has Stated a Due Process Claim**

The Due Process Clause does not protect against all deprivations of constitutionally protected interests, rather it protects "only against deprivations without due process of law." *Parratt v. Taylor*, 451 U.S. 527, 537, 101 S. Ct. 1908 (1981) (internal quotation marks omitted), *overruled in part on other grounds by Daniels v. Williams*, 474 U.S. 327, 330-331, 106 S. Ct. 662 (1986).

To state a claim for a procedural due process violation a plaintiff must "first identify a property right, second show that the [government] has deprived him of that right, and third show that the deprivation was effected without due process." *Local 342, Long Island Pub. Serv. Emps., UMD, ILA, AFL–CIO v. Town Bd. of Huntington*, 31 F.3d 1191, 1194 (2d Cir. 1994) (citation omitted).

Apparently, the parties do not contest, at least for purposes of this motion, the presence of the first two elements as they are not addressed. The parties focus solely on the process that was due, i.e., what steps SBU needed to take before adjudicating Doe responsible for nonconsensual sexual activity and disciplining him.

The third element requires facts demonstrating that the plaintiff was deprived of "an opportunity . . . granted at a meaningful time and in a meaningful manner for [a] hearing appropriate to the nature of the case." *Boddie v. Connecticut*, 401 U.S. 371, 378 (1971) (internal quotations omitted) (alteration in original). "[I]t is necessary to ask what process the State has provided, and whether it was constitutionally adequate" in determining whether a constitutional violation has occurred. *Zinermon v. Burch,* 494 U.S. 113, 126, 110 S. Ct. 975 (1990). Ordinarily, due process "requires that a state or local government afford persons 'some kind of hearing' prior to depriving them of a significant liberty or property interest." *Locurto v. Safir,*

264 F.3d 154, 171 (2d Cir. 2001). Determining the specific dictates of due process generally requires consideration of three distinct factors." *Mathews v.* Eldridge, 424 U.S. 319, 334 (1976). They are: "(1) 'the private interest that will be affected by the official action;' (2) 'the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute safeguards;' and (3) 'the Government's interest, including the . . . fiscal and administrative burdens that the additional or substitute procedural requirement[s] would entail.'" *Nnebe v. Daus*, 931 F.3d 66, 80 (2d Cir. 2019) (quoting *Mathews*, 4224 U.S. at 335.) Although the Second Circuit has not opined on the exact contour of disciplinary hearings in the academic context, *see Winnick v. Manning*, 460 F.2d 545, 548 (2d Cir. 1972) (noting that "there remain many vexing questions as to what due process requires in school disciplinary hearings"), it has stated that "[d]ue process does not invariably require the procedural safeguards accorded in criminal proceedings." *Id. at* 549; *accord, Doe v. Cummins*, 662 F. App'x 437, 446 (6th Cir. 2016) ("disciplinary hearings against students . . . are not criminal trial, and therefore need not take on many of those formalities'); *Ash v. Auburn Univ.*, 812 F.2d 655, 664 (11th Cir. 1987) (The rights of accused students "are not co-extensive with the rights of litigants in a civil trial or with those of defendants in a criminal trial.").

Here, Plaintiff asserts that the process afforded him was deficient in the following respects: (1) Defendants failed to follow their own procedures in that (a) it applied the provision of the 2017 Code instead of the 2018 Code; (b) allowed BG the opportunity to call additional witnesses at the hearing despite her failure to provide the required notice;  (c) deviated from the time frame of notice, review and determination of the claims; and (d) allowed oral character witness testimony; (2) applied a preponderance of the evidence standard; and (3) failed to provide Doe an opportunity to cross-examine BG and AH.

Addressing first Defendants' alleged failure to follow their own procedures, the Court is unconvinced that SBU's use of the 2017 Code instead of the 2018 Code states a claim for procedural due process. Given that the Code contains both standards of behavior and procedural rules for disciplinary hearings, it makes sense that the Code in effect at the time of the alleged incident would be applied. Plaintiff cites no case supporting the proposition that due process required SBU to apply the hearing procedures in effect at the time the hearing was held rather than those provisions in effect at the time of the events at issue. As to the other alleged instances of SBU's failure to follow its own procedures, the Code designated the presiding officer as the final arbiter of the admissibility of information. Moreover, Plaintiff provides no authority for the claim that the alleged deviations from procedure support a due process claim. *See, e.g., Doe v. Univ. of Cincinnati*, 872 F.3d 393, 407 (6th Cir. 2017) ("A school's departure from its own hearing rules amounts to a due process violation only when the departure results in a procedure which itself impinges on due process.") (internal quotation marks omitted). Finally, as to the delay of five months between the filing of BG's complaint and the holding of the hearing, Plaintiff's assertion of unspecified harm is insufficient to permit an inference that his right to due process was violated. Conspicuously absent is any allegation that the delay resulted in the inability to procure witnesses or evidence to the detriment of Plaintiff.

The Court also rejects the contention that due process required that the university apply a standard more stringent than a preponderance of the evidence. Such a standard is the accepted standard in the vast majority of civil litigations and, as noted above, courts have rejected the

notion that the safeguards applicable to criminal proceedings should be applied in the school disciplinary context. *See Univ. of Cincinnati*, 872 F.3d at 400 ("Even in the case of a sexual assault accusation – where a finding of responsibility will have a substantial and lasting impact on the student, the protection afforded him need not reach the same level that would be present in a criminal prosecution.") (internal quotation marks, citations and ellipses omitted).

Next to be addressed is the issue of whether the failure to provide Plaintiff with an opportunity to directly cross-examine his accuser violates due process. In support of his argument that the failure to provide him with such an opportunity states a due process claim, Plaintiff, relies upon the Sixth Circuit's decisions in *Doe v. Univ. of Cincinnati*, 872 F.3d 393 (6th Cir. 2018) and *Doe v. Baum*, 903 F.3d 575 (6th Cir. 2019). It is to these cases that the Court now turns.

In the *Cincinnati* case, acknowledging the need for cross-examination when issues of credibility are pivotal, the Court found constitutional a "circumscribed form of cross-examination" whereby cross-examination was limited to preapproved written questions asked by the panel, even if the panel did not ask all of the questions the accused student submitted and did not permit follow-up questions. 872 F.3d at 400-404. As that court noted, that is the procedure the Department of Education's Office for Civil Rights previously recommended for the victim's wellbeing. *Id.* at 403 *(citing* Catherine E. Lhamon, Assistant Secretary for Civil Rights, Questions and Answers on Title IX and Sexual Violence, at 31, April 29, 2014, https://www2.ed.gov/about/offices/list/ocr/docs/qa-201404-title-ix.pdf (last visited Aug. 31, 2017).[4] It is that procedure that was used by SBU this case.

---

[4] In *University of Cincinnati,* the problem arose because the accused did not appear at the hearing and thus the accused was prevented from having an opportunity for that circumscribed cross-examination.

In *Baum*, the court held that a due process claim had been stated where the accused was found responsible by the University's disciplinary panel, which concluded that the accuser was more credible **but heard no live testimony**, holding that in circumstances where credibility is at issue a university must allow for some form of live questioning in front of a fact-finder. 903 F.3d at 580-85. It then went on to state that "[t]hat is not to say however, that the accused student always has a right to *personally* confront his accuser and other witnesses," but a university must allow a representative of the accused to cross-examine the accuser. *Id*. at 583 (emphasis in original).

Neither *University of Cincinnati* nor *Baum* support Plaintiff's claim that he has stated a due process claim because he was not allowed to personally cross-examine his accuser. And while the *Baum* court did hold that a university must allow cross-examination by a representative, that holding is not binding on this Court and at least one other circuit court has rejected such a requirement, *see Haidak v. Univ. of Mass.-Amherst*, 933 F.3d 56, 69-70 (1st Cir. 2019). As the *Haidak* court reasoned in declining to adopt such a requirement: "[W]e have no reason to believe that questioning of a complaining witness by a neutral party is so fundamentally flawed as to create a categorically unacceptable risk of erroneous deprivation, We also take seriously the admonition that student disciplinary proceedings need not mirror common law trials. If we were to insist on a right to party-conducted cross-examination, it would be a short slide to insist on the participation of counsel able to conduct such examination and at that point the mandated mimicry of a jury-waived trial would be near complete." *Id*. (internal citations omitted). *See also Yu v. Vassar College*, 97 F. Supp. 3d 448, 465 (S.D.N.Y. 2015) (rejecting claim that proceedings were unfair because accused was required to question the witness through the panel chair, who refused to ask many of his questions).

Turning then to Plaintiff's claim that he was denied the right to cross-examine his accuser's "witnesses," the Court notes that the only witness specifically so referenced in the Complaint was "AH" and AH did not personally appear at the hearing. Given that there is no claim that hearsay testimony is not permissible at a student disciplinary (and indeed, SBU's Code specifically allows for such), it would appear that Plaintiff's due process claim in this regard is more appropriately framed as the failure of the hearing panel to attempt to contact AH based on BG's representation that he did not wish to appear. According to the Complaint, Plaintiff was thus unable to question him about the inconsistencies between his written statement and his statements to the SBU investigator. However, there is no allegation that he was prevented from pointing out those inconsistencies to the hearing panel. Moreover, according to the Complaint, BG admitted at the hearing that the supplemental statement was authored at her direction and that she explicitly directed AH to include a reference to anal intercourse in it. Given the foregoing, a plausible due process violation has not been stated vis a vis plaintiff's inability to "cross-examine" AH.

But even if a due process claim has been stated, as explained in the next section, Haas and Shane are entitled to qualified immunity.

**B.     Whether Haas and Shane are Entitled to Qualified Immunity**

Even if the issues raised by Plaintiff support a due process claim, as discussed below, Haas and Shane are entitled to qualified immunity.

"Qualified immunity is an affirmative defense that shields government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Stephenson v. Doe*, 332 F.3d 68, 76 (2d Cir. 2003) (internal quotation marks and citation omitted). Rights are "clearly

established" where "existing law . . . place[s] the constitutionality of the officer's conduct 'beyond debate.' " *Dist. of Columbia v. Wesby*,  -- U.S. --, 138 S. Ct. 577, 589 (2018) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) ). "In determining whether a right was so clearly established, the Supreme Court has emphasized that the 'dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.' " *Barboza v. D'Agata*, 676 F. App'x 9, 12 (2d Cir. 2017) (summary order) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001) ). While a plaintiff need not identify "a case directly on point" to demonstrate that an asserted federal right was clearly established at the time a defendant acted, the Supreme Court has instructed time and again that "existing precedent must have placed the statutory or constitutional question beyond debate." *Mullenix v. Luna*, 136 S. Ct. 305, 551 (2015) (per curiam) (emphasis added) (citation omitted); *see also, e.g., City of Escondido v. Emmons*, 139 S. Ct. 500, 504 (2019); *Wesby*, 138 S. Ct. at 589-90  ("The rule must be settled law, ... which means it is dictated by controlling authority or a robust consensus of cases of persuasive authority." (internal quotation marks and citations omitted) ); *White v. Pauly*, 137 S. Ct. 548, 551-52 (2017) (per curiam) ("[G]eneral statements of the law are not inherently incapable of giving fair and clear warning to officers, . . . but in the light of pre-existing law the unlawfulness must be apparent . . . ." (internal quotation marks omitted) ). To that end, the Supreme Court has described qualified immunity as a "demanding" doctrine protecting "all but the plainly incompetent or those who knowingly violate the law." *Wesby*, 138 S. Ct. at 589 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986) ); *accord Johnson v. Perry*, 859 F.3d 156, 170 (2d Cir. 2017) (Qualified immunity protects officers when "their decision was reasonable, even if mistaken"; that, in turn, "protect[s] all but the plainly incompetent or those who knowingly violate the law.") (internal quotation marks omitted).

In deciding whether qualified immunity applies, courts conduct a two-step analysis: "First, do the facts show that the officer's conduct violated plaintiff's constitutional rights? Second, if there was a constitutional violation, was the right clearly established at the time of the officer's actions?" *Barboza*, 676 F. App'x at 12 (2d Cir. 2017); see *Winfield v. Trottier*, 710 F.3d 49 (2d Cir. 2013) (when deciding the issue of qualified immunity, "courts ask whether the facts shown [1] make out a violation of a constitutional right, and [2] whether the right at issue was clearly established at the time of defendant's alleged misconduct.") (internal quotation marks omitted). Courts, however, "may, in [their] own discretion, refrain from determining whether a constitutional right has been violated and instead move directly to the question of qualified immunity. . . ." *Costello v. City of Burlington*, 632 F.3d 41, 51-52 (2d Cir. 2011) (Pooler, J., concurring). Here, the Court will address whether the rights at issue were clearly established at the time of Shane's and Haas' alleged conduct.

As noted earlier, in 1972 the Second Circuit noted in *Winnick* that "there remain many vexing questions as to what due process requires in school disciplinary hearings." 460 F.2d at 548. Only some of those questions have been answered in the ensuing forty-five plus years. Thus, while the courts have recognized that when credibility is at issue the accused should be provided "some form" of cross-examination, Plaintiff has failed to cite to any case, decided before the events at issue here,[5] holding that due process requires (a) permitting the accused to *personally* cross-examine the accuser, (b) the exclusion of hearsay evidence, or (c) a more stringent standard than a fair preponderance of the evidence. Indeed, there are decisions holding otherwise. *See, e.g., Haidak v. Univ. of Mass.-Amherst*, 933 F.3d 56, 68-71 (1st Cir. 2019)

---

[5] *Baum* did not hold that an accused has a right to personally cross-examine an accuser. Also, that case was decided after the hearing at issue in this case was held. And while it is alleged that it was brought to the attention of the appeals panel, it is not controlling law in this Circuit.

(holding the use of inquisitorial system of adjudication by university, whereby the accused student was not allowed to question opposing witnesses himself, did not violate accused's due process rights). And there are numerous cases finding that qualified immunity applies to individuals accused of violating due process in a student disciplinary hearing due to the fact that the contours thereof are not clearly estalbished. *See, e.g, Doe v. Purdue Univ*, 928 F.3d 652 (7th Cir. 2019) (while plaintiff adequately pleaded process was deficient in that the school did not disclose evidence to accused, two of the three panel members did not read investigative report yet found accused guilty without ever speaking to accuser in person, panel members were entitled to qualified immunity as rights were not clearly established); *Doe v. Northern Mich. Univ.,* 393 F. Supp. 3d 383, 697 (W.D. Mich. 2019) (holding the right to cross-examine an accuser at university disciplinary hearing was not clearly established, entitling individual defendants to qualified immunity); *Doe v. Univ. of Miss.,* 361 F. Supp. 3d 597 (S.D. Miss. 2019) (while plaintiff stated plausible due process claim based on selection of disciplinary panel and his inability to cross-examine witnesses against him, individual defendants were entitled to qualified immunity given plaintiff's failure to cite a single case that would put defendants on notice that their conduct violated clearly established law); *Doe v. Penn. State Univ.*, 336 F. Supp. 3d 441 (M.D. Pa. 2018) (although student sufficiently alleged disciplinary procedures violated due process where only fact in dispute was whether sexual encounter was consensual but disciplinary procedure offered panel only paperwork describing investigation of allegations, individual defendants were entitled to qualified immunity as student's right to personally appear before public university's disciplinary panel to address sexual assault allegations against him was not clearly established); *Marshall v. Indiana Univ.,* 170 F. Supp. 3d 1201 (S.D. Ind. 2016) (university officials were entitled to qualified immunity on due process claim based on

allegations that accused's attorney was not allowed to participate in the hearing, obtain copies of evidence prior to the hearing, or to interview witnesses and that panel used preponderance of the evidence and "some evidence" standards); *cf. J. Endres v. Northeast Ohio Med. Univ.*, 938 F.3d 281, 302 (6th Cir. 2019) ("To be sure, the Supreme Court's decisions in *Goss* and *Horowitz* make clear that a student facing a serious sanction for disciplinary misconduct is entitled to a fair hearing, but neither those cases nor our own decisions have articulated a bright-line rule to distinguish academic from disciplinary matters. Moreover, clearly established law "must be 'particularized' to the facts of the case," yet no case from the Supreme Court or this court has held that cheating is a disciplinary matter warranting more robust procedures under the Due Process Clause. And because no precedent clearly established that Endres was even entitled to a hearing, it follows that his right to be present at the hearing and to hear the evidence against him was not clearly established, either. We therefore hold that Emerick is entitled to qualified immunity.") (internal quotation marks omitted).

To the extent that Plaintiff argument is that his advisor should have been allowed to cross-examine BG, the Sixth Circuit's decision in *Baum* does not provide a basis for this Court to conclude that such a right was clearly established.

The motion of Shane and Haas to dismiss the 1983 claims against them is granted.

## IV.    Title IX Claims

Defendants seek dismissal of the Title IX claims on two grounds: (1) the claims against Haas and Shane must be dismissed because there is no individual liability under Title IX; and (2) the factual allegations fail to state a plausible Title IX claim against SBU.

### A.    Title IX Generally

Title IX provides in relevant part that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). "Because Title IX prohibits (under covered circumstances) subjecting a person to discrimination on account of sex, it is understood to 'bar the imposition of university discipline when gender is a motivating factor in the decision to discipline.'" *Doe v. Columbia Univ.*, 831 F.46, 53 (2d Cir. 2016) (quoting *Yusuf v. Vassar College*, 35 F.3d 709, 714 (2d Cir. 1994). "[A] complaint under Title IX, alleging that the plaintiff was subjected to discrimination on account of sex in the imposition of university discipline, is sufficient with respect to the element of discriminatory intent, like a complaint under Title VII, if it pleads specific facts that support a minimal plausible inference of such discrimination." *Columbia Univ.,* 831 F.3d at 56; *see also Menaker v. Hofstra Univ.,* 935 F.3d 20 (2d Cir. 2019) (stating similar principles are applied in Title VII and Title IX when seeking to identify discriminatory intent).

In this Circuit, attacks on university disciplinary proceedings on the grounds of gender bias usually fall within two categories. "In the first category, the claim is that the plaintiff was innocent and wrongly found to have committed an offense. In the second category, the plaintiff alleges selective enforcement. Such a claim asserts that, regardless of the student's guilt or innocence, the severity of the penalty and/or the decision to initiate the proceeding was affected by the student's gender. Plaintiffs may plead in the alternative that they are in both categories, but in neither case do wholly conclusory allegations suffice for purposes of Rule 12(b)(6)." *Yusuf*, 35 F.3d at 715.

To survive a 12(b)(6) motion an erroneous outcome claim "must allege particular facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary process." *Id.* "[T]he pleading burden in this regard is not heavy. For example, a complaint may allege particular evidentiary weaknesses behind the finding of an offense such as a motive to lie on the part of a complainant or witnesses, particularized strengths of the defense, or other reason to doubt the veracity of the charge. A complaint may also allege particular procedural flaws affecting the proof." *Id.*

A selective enforcement claim asserts that regardless of guilt or innocence, the potential severity of the penalty and/or the decision to initiate the proceeding was affected by the student's gender, which may be supported by allegations that demonstrate that a student of differing gender accused of similar sexual misconduct charges received preferential treatment by the school. *Id.*

Most importantly, under either theory "[a] plaintiff must thus also allege particular circumstances suggesting that gender bias was a motivating factor . . . ." *Id.*[6] The alleged facts need support only a "minimal plausible inference" of bias. *Columbia Univ.*, 831 F.3d at 54-56.

## B.    Individual Liability of Shane and Haas

The Supreme Court has held that Title IX creates liability only for institutions and programs that receive federal funds, but Title IX "has consistently been interpreted as not authorizing suit against school officials, teachers, and other individuals*." Fitzgerald v. Barnstable Sch. Comm*., 555 U.S. 246, 257 (2009); 20 U.S.C. § 1681(a). Accordingly, "the

---

[6] "Allegations of a causal connection in the case of university disciplinary cases can be of the kind that are found in the familiar setting of Title VII cases. Such allegations might include, inter alia, statements by members of the disciplinary tribunal, statements by pertinent university officials, or patterns of decision-making that also tend to show the influence of gender. Of course, some allegations, such as statements reflecting bias by members of the tribunal, may suffice both to cast doubt on the accuracy of the disciplinary adjudication and to relate the error to gender bias." *Yusef*, 35 F.3d at 715.

overwhelming majority of federal courts" in this Circuit have held that "only the institutional recipient of federal funds can be held liable under Title IX; individuals, who are not recipients, cannot be held liable." *Tesoriero v. Syosset Cent. Sch. Dist.*, 382 F. Supp. 2d 387, 396 (E.D.N.Y. 2005); *see also Welcome v. N.Y.C. Dep't of Educ.*, 2018 WL 5817156, at *4 (E.D.N.Y. Nov. 6, 2018) (citing cases*); Doe v. Nat'l Ramah Comm'n, Inc.*, 2018 WL 4284324, at *8 (S.D.N.Y. Sept. 7, 2018) ("Numerous courts within this Circuit have held that Title IX does not give rise to individual liability.") (citing cases); *Chandrapaul v. City Univ. of N.Y.*, 2016 WL 1611468, at *14 (E.D.N.Y. Apr. 20, 2016) ("There is no individual liability under Title IX."); *KF ex rel. CF v. Monroe Woodbury Cent. Sch. Dist.*, 2013 WL 177911, at *8 (S.D.N.Y. Jan. 16, 2013), *aff'd*, 531 F. App'x 132 (2d Cir. 2013). As Title IX does not authorize individual liability and Plaintiff does not allege that either Haas or Shane was a recipient of federal funds, the Title IX claims against them are dismissed.

### C.     The Claim Against SBU

In this case, Plaintiff asserts claims of both erroneous outcome and selective enforcement. The Court will consider each in turn.

####     1.     Erroneous Outcome

Read fairly, Plaintiff alleges that after he repeatedly rebuffed BG's romantic overtures, BG initiated the encounter in question, and when, after the sexual encounter ended, Plaintiff did show any affection for BG, BG set out for revenge. For example, when he stopped responding to her texts, she threatened that "if you don't respond I'm going to report you." The Complaint then alleges that BG took steps to make good on her threat. She and her friends spoke on the phone while drafting messages and then took pictures of the messages so as to preserve them, as such messages automatically delete after 24 hours. Doe also alleges various actions by Shane as head

of the disciplinary hearing panel, that precluded him from fully defending himself. Unequal treatment of Doe and BG is also asserted. For example, Shane allowed BG to submit evidence that wasn't properly disclosed in accordance with the Code provision but denying Plaintiff the same opportunity; and asked all of the cross-examination questions posed by BG but did not ask all of his questions and rephrased others. There are also sufficient facts set forth to cast doubt as the accuracy of the outcome.

The Complaint also alleges circumstances suggesting bias. In this regard the Second Circuit's recent decision in *Menaker v. Hofstra Univ.*, 935 F.3d 20 (2d Cir. 2019) is instructive. In *Menaker*, the question was whether a university tennis coach stated a Title VII claim in connection with his termination which was in response to allegedly malicious allegations of sexual harassment by a female student and member of the tennis team. First, the court set forth the circumstances which provide the requisite support for a p*rima facie* case of sex discrimination: "a university (1) takes an adverse action against a student or employee, (2) in response to allegations of sexual misconduct, (3) following a clearly irregular investigative or adjudicative process, (4) amid criticism for reacting inadequately to allegations of sexual misconduct by members of one sex." *Id.* at 33. Finding that elements 1, 2, and 4 were plausibly alleged, the court went on to examine whether the firing followed a sufficiently irregular process to raise an inference of sex discrimination." *Id.* at 34 & n. 50. While the court declined to define precisely what sort of irregularities meet the standard of "clearly irregular investigative or adjudicative procedures," it gave the following examples of allegations that plausibly suggest bias: when the "evidence substantially favors one party's version of a disputed matter, but an evaluator forms a conclusion in favor of the other side" and where "decision-makers choose to accept an unsupported accusatory version over that of the accused and decline even to explore

the testimony of the accused's witnesses." *Id.* at 34 (internal quotation marks and brackets omitted). In the case before it, the presence of bias was suggested by, among other things, the disregard of the process for investigating and determining complaints of sexual harassment provided for by the university. *Id*. at 34-35.

Here, Plaintiff has alleged sufficient irregularities in the adjudicative process to permit an inference of bias. Among other things, Plaintiff sets forth facts that suggest the evidence of his intoxication was substantial and that BG even admitted he was intoxicated at the time of the encounter at issue, yet the hearing panel found BG not responsible for the charges lodged against her by Plaintiff. Also, there is the failure to follow procedures, including the failure to exclude the information BG did not timely submitted to the panel or adjourn the hearing to allow for its review, not holding the hearing in a timely fashion, and taking live testimony from character witnesses.

The Complaint also contains allegations of disparate treatment of Plaintiff and BG such as giving BG additional time but denying such to Plaintiff, assisting BG but not Plaintiff, asking suggestive follow-up questions of BG but asking Plaintiff questions designed to entrap him, and permitting BG to verbally assault Plaintiff during her closing argument while acknowledging that the verbal offensive ran afoul of SBU's Code. These allegations are sufficient to suggest that the seeming bias was on the basis of sex. The Court is aware that in *Columbia*, the Second Circuit observed that while allegations that a hearing process favored victims over the accused "may support the inference of bias, they do not necessarily relate to bias on account of sex." 831 F.3d at 57. *See also Haley v. Va. Commonwealth Univ.,* 948 F. Supp. 573, 579 (E.D. Va. 1996). In *Columbia*, the inference that the bias was on account of sex was supplied by allegations regarding public pressure demanding that the university react more swiftly and severely to

female complaints of sexual assault against males, allegations which are not present in the current Complaint. However, that court was not presented with the situation presented here. In this case, both Plaintiff and BG held dual roles of victim and accused and therefore the differing treatment permits an inference on bias based on sex. In addition, given that BG accused Plaintiff of sexual misconduct, Plaintiff may be able to establish liability under a "cat's paw" theory, imputing BG's discriminatory intent to SBU. *See Menaker,* 935 F.3d at 37-39.

In sum, a claim for erroneous outcome has been sufficiently alleged.

2. Selective Enforcement

The allegations however, are insufficient to state a claim of selective enforcement. As noted above, a selective enforcement claim under Title IX "asserts that, regardless of the student's guilt or innocence, the severity of the penalty and/or the decision to initiate the proceeding was affected by the student's gender." *Yusuf*, 35 F.3d at 715.

In this case, Plaintiff relies solely upon the "similarly situated female party BG who was accused of violating the same Sexual Misconduct provisions of SBU's Code as Plaintiff." (Pl.'s Mem. at 22). That reliance is misplaced.

Turning first to the decision to initiate proceeding, proceedings were initiated against both Plaintiff and BG. Thus, there is no apparent difference in the decision to initiate proceeding between the two. Similarly, the use of BG as a comparator vis a vis punishment is inapposite given that BG was found not responsible whereas Plaintiff was found responsible. Indeed, Plaintiff's arguments in support of his selective enforcement claim all center around the evidence presented at the hearing and the differences the hearing panel's treatment of him and BG. While those allegations are relevant to the issue of bias vis a vis an erroneous outcome case, they do not support a plausible selective enforcement claim. Absent from the Complaint are any allegations

that disciplinary proceeding were not initiated against similarly situated females or that similarly situated females found guilty of the same offense received a less severe penalty.

The Title IX selective enforcement claim is dismissed.

## CONCLUSION

For the reasons set forth above, the motion to dismiss is granted as to (1) the § 1983 and Title IX claims as against Haas and Shane; (2) the § 1983 claim against SBU; and (3) the Title IX selective enforcement claim against SBU. The motion to dismiss the Title IX erroneous outcome claim against SBU is denied.

**SO ORDERED.**

Dated: Central Islip, New York           s/ Denis R. Hurley
      December 9, 2019               Denis R. Hurley
                                        United States District Judge